UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANTOINE BOUSLEY, | Case No.: 2:22-cv-00769-APG-EJY |
| Plaintiff | **Order Granting Defendants' Motion for Summary Judgment and Granting Plaintiff's Motion to Extend Time** |
| v. | |
| BONNIE POLLEY, et al., | [ECF Nos. 110, 113] |
| Defendants | |

Plaintiff Antoine Bousley is an inmate currently housed at High Desert State Prison and previously housed at Clark County Detention Center (CCDC).  Bousley sues the defendants under 42 U.S.C. § 1983 for an alleged First Amendment violation because they denied his request to participate in Ramadan meal services while he was housed at CCDC.  The defendants, who are correctional officers, the deputy chief, and the religious coordinator[1] at CCDC, move for summary judgment based on qualified immunity.  Bousley opposes summary judgment and requests reconsideration of my previous order denying the addition of a Religious Land Use and Institutionalized Persons Act (RLUIPA) claim.  Bousley also moves to extend time to file his response to the defendants' summary judgment motion.

I grant the defendants' motion for summary judgment because the defendants' conduct did not violate Bousley's clearly established constitutional rights.  I deny as moot Bousley's request to add a RLUIPA claim because he could seek only injunctive relief against these defendants under RLUIPA, but he is no longer housed at CCDC.

---

[1] The CCDC religious coordinator, Bonnie Polley, passed away.  A representative of her estate substituted Polley as a defendant. ECF No. 97.

# I. BACKGROUND

Bousley was housed at CCDC's North Valley Complex (NVC) starting in 2019. ECF No. 118 at 11, 69. In April 2020, Bousley signed up for Ramadan meal services by following the instructions on a flyer posted in his facility. *Id.* at 50, 60-61, 63. He received a response that said: "You do not qualify for Ramadan because you have not attended Jumah or Islam 101, and you are not on the waiting list to attend [those] classes. You have never requested a Halal diet." *Id.* at 63. Bousley responded that when he was previously incarcerated at CCDC in 2008, he was on the Halal diet and attended Muslim services. *Id.* at 64. Bousley also noted that defendant Bonnie Polley, the CCDC religious coordinator, "should look [him] up from 2008." *Id.* Polley still denied his request to participate in Ramadan. *Id.* at 64-65. Bousley then grieved the issue to defendants Captain Forbus and Deputy Chief Fred Meyers. *Id.* at 68-69. Defendants Ramona Logan and Aaron Mosley[2] responded to these grievances, informing Bousley that:

> Prior incarcerated years do not carry over with religious services & much has changed drastically since prior observances. Your imam now requires that Ramadan participants be involved with his program consistently and since you have been incarcerated with CCDC since 2019 you could have done that. Contact classification and request to return to CCDC so that you can be housed in North Tower and become an active participating Muslim in Jumah classes. Unfortunately you are unable to participate in Ramadan at this time. Please contact programs so that you can enroll in Jumah classes when they resume with your imam. You can then prepare for next year[']s celebration.

*Id.* at 68-69.

Imam Mujahid Ramadan is the CCDC volunteer Muslim imam. ECF No. 110-2 at 2. He "provide[s] prayer services, conduct[s] classes and coordinate[s] with the Religious Coordinator at Clark County Detention Center." *Id.* Imam Ramadan implemented the policy "that inmates

---

[2] User "A6887M" was identified as defendant Aaron Mosley. ECF No. 80 at 2.

who desired to participate in . . . Ramadan . . . either attend or be in the waiting list to attend Islam and/or Jumah 101 classes." *Id.* at 3. "In the alternative, inmates could also request Halal diets" to qualify for Ramdan. *Id.* The imam implemented these requirements "to ensure that only those inmates who sincerely hold and/or practice the tenets of Islam be allowed to participate in Islamic activities." *Id.* The imam declares that because Bousley was not signed up for the classes and had not requested a Halal diet, the imam "was unable to determine the sincerity of [Bousley's] religious beliefs, and thus, [Bousley's] request to participate in Ramadan 2020 was denied." *Id.*

In his declaration in support of his opposition to the defendants' motion, Bousley declares that he is not of the same sect of Islam as Imam Ramadan, and in fact Imam Ramadan is heretical to Bousley's denomination. ECF No. 118 at 49. Bousley also declares that the sign-up flyer did not notify him about the class or diet requirement, there were no Jumah or Islam 101 classes held at NVC, and a Halal diet is not a requirement to celebrate Ramadan. *Id.* at 50.

CCDC's standard operating procedure for approving inmates' religious diets requires that an inmate fill out a questionnaire "to verify the inmate's faith." ECF No. 118 at 57. The religious coordinator is required to "[r]eview the questionnaire and forward it to an approved religious representative of that faith for verification that the inmate is of that faith . . . in accordance with the religious doctrinal requirements of that faith." *Id.* at 58. However, if "a method of verification is not available, the inmate is subject to an interview by the facility religious coordinator" before receiving approval for a religious diet. *Id.* In 2008, Polley conducted a sincerity interview with Bousley and approved him for Ramadan. *Id.* at 50. In 2020, however, neither Polley nor the Imam attempted to determine Bousley's sincerity through an interview. *Id.*

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 110)

### A. Summary Judgment Standard

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). A government official defendant is entitled to qualified immunity unless the plaintiff shows that (1) the defendant violated the plaintiff's constitutional right and (2) "the right was clearly established at the time of the incident." *Martinez v. High*, 91

4

F.4th 1022, 1028 (9th Cir. 2024) (quotation omitted). Because I have the discretion to consider either prong of the qualified immunity test first, I "need not decide the first prong if the second is dispositive." *Id.* (citing *Pearson*, 555 U.S. at 236).

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). To show the right at issue is clearly established, there need not be "a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quotation omitted). In other words, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### C. Parties' Arguments

The defendants contend that they are protected by qualified immunity because they did not personally participate in the alleged First Amendment violation. Rather, Imam Ramadan created and implemented the participation policy. They also contend that, even if they did personally participate, application of the policy is constitutional because it passes the test set forth by *Turner v. Safley*, 482 U.S. 78 (1987). Lastly, the defendants argue that even if they violated Bousley's First Amendment rights, those rights were not clearly established.

Bousley responds that it was impossible for him to take the required classes because the imam is heretical to Bousley's denomination, there were no Islam classes at his facility, and he had no notice of the class requirement. Therefore, Bousley contends, Polley should have interviewed him to determine the sincerity of his religious beliefs. He argues that because the defendants received training on inmates' First Amendment rights, and because CCDC's religious

diet policy required a sincerity interview, they were on notice that preventing Bousley from receiving Ramadan services without a sincerity interview was unconstitutional. Bousley also points to *Florer v. Congregation Pidyon Shevuyim, N.A.*, 603 F.3d 1118 (9th Cir. 2010), as clearly established law that the defendants could not outsource the task of determining his sincerity to Imam Ramadan.

The defendants reply that the *Florer* opinion Bousley cites was withdrawn by the Ninth Circuit. They also argue that Bousley has not shown that they prevented him from attending the Islamic classes or receiving a Halal diet.

**D.  Analysis**

In 2020, inmates had a clearly established "right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1988). It was also clearly established that "[i]t is appropriate for prison authorities to deny a special diet if an inmate is not sincere in his religious beliefs." *Id.* In *McElyea*, an inmate sued when he was denied kosher meals. *Id.* at 197. The Ninth Circuit held that the prison chaplain's "reliance on second-hand knowledge" that the inmate had not kept to a kosher diet at his previous prison was not a "reasonable method of determining religious commitment." *Id.* Thus, there was also clearly established law that jail authorities must use a reasonable method to determine inmates' religious sincerity in deciding access to religious diets.

Bousley argues that the withdrawn *Florer* opinion clearly established that the defendants could not delegate to the volunteer imam their duty to provide him with reasonable access to religious materials and services. However, that opinion was withdrawn by the Ninth Circuit for rehearing, which means that it is neither binding nor clearly established law. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 611 F.3d 1097, 1098 (9th Cir. 2010) (withdrawing May 5,

2010 opinion). Upon rehearing arguments in *Florer*, the Ninth Circuit held that an outside religious organization was not a state actor when the organization determined that the plaintiff inmate was not Jewish and declined him Jewish materials and services of a rabbi. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 919 (9th Cir. 2011). But the Ninth Circuit did not comment on the constitutionality of the prison authorities using an external consultant to assist with religious sincerity determinations.

Bousley does not identify, and I have not found, any other clearly established law that provides guidance as to how religious sincerity must be determined. He points to the CCDC Religious Diet procedure, but that is the facility's internal policy, not clearly established law. ECF No. 118 at 57-58. He also points to the CCDC's First Amendment training that the defendants presumably received, but that training does not cite clearly established law as to how jail authorities should determine religious sincerity. *Id.* at 53-55. Bousley does not point to clearly established law that jail authorities must conduct a sincerity interview, or that sincerity determinations from previous incarcerations must carry over to new terms. Nor does he identify clearly established law prohibiting jail authorities from delegating either the creation or implementation of a sincerity test to an outside religious consultant.

Moreover, Bousley never informed the defendants that he was of a different sect than the imam or that he was religiously opposed to taking the imam's classes. He only described himself as "Muslim." ECF No. 118 at 64-69. He also never informed the defendants why he did not register for Halal diets. Had he done these things, this may have put the defendants on notice that an interview, rather than the imam's policy, would be the appropriate method for determining Bousley's religious sincerity. But under the facts in this case, a reasonable official in the defendants' shoes would not have been on notice that applying the imam's policy to

determine Bousley's access to Ramadan meal services would violate Bousley's constitutional rights.

Thus, the defendants are entitled to qualified immunity because Bousley has not met his burden of showing the defendants' conduct violated clearly established law. I therefore grant their motion for summary judgment. I need not analyze whether the defendants' conduct was constitutional nor whether the defendants personally participated in the alleged violations.

**III. BOUSLEY'S REQUEST FOR RECONSIDERATION AS TO RLUIPA CLAIM**

Bousley requests reconsideration of my previous order denying him the ability to add a RLUIPA claim to his complaint. ECF Nos. 118 at 1-4; 106. In support of this request, Bousley cites *Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008). In *Alvarez*, the Ninth Circuit held that even though an inmate did not identify a RLUIPA cause of action in his complaint, the complaint's underlying facts supporting a First Amendment claim also plausibly alleged a RLUIPA claim, so the defendants had sufficient notice of a RLUIPA claim. 518 F.3d at 1157-58. Bousley explains that he did not have access to *Alvarez* when he filed his objection to Magistrate Judge Youchah's recommendation denying a new RLUIPA claim (ECF No. 98) because, as a pro se inmate, he had limited legal research resources. Defendants respond that *Alvarez* does not apply here because "no possible RLUIPA claim was established" in the screened complaint. ECF No. 119 at 10. They also contend that Bousley failed to attempt to amend his complaint to add a RLUIPA claim before the deadline ran out, and his untimeliness should not be excused now.

"RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). RLUIPA's damages provision does not waive the states'

8

sovereign immunity, so a plaintiff also cannot obtain monetary damages from state officials acting in their official capacity. *Id.* Thus, RLUIPA could offer only injunctive relief in this case.

Bousley concedes this point but argues that "injunctive relief is still necessary as his being rehoused at CCDC is reasonably likely." ECF No. 118 at 4. He argues that he is "fighting his current incarceration" and may be moved to CCDC if the state courts review his conviction. *Id.* He also argues that due to "his neighborhood, his economic status, and his criminal background," even if he were released and lived a "pristine and crime-free life," he "fully expects he hasn't seen the last of CCDC." *Id.*

Even if under *Alvarez* Bousley could add a RLUIPA claim now, any equitable relief would be moot because he is no longer housed at CCDC. "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Jones*, 791 F.3d at 1031(quotation omitted). "Equitable claims are not moot to the extent the plaintiff suffers continuing effects of the alleged violations or has a reasonable expectation that defendants could violate his rights in the future." *Jackson v. Sullivan*, 692 F. App'x 437, 439 (9th Cir. 2017) (citing *Jones*, 791 F.3d at 1031) (simplified). Bousley's reasons that he is likely to return to CCDC are speculative. There is no evidence that the same policy at CCDC affects his ability to observe Ramadan at his current facility. There is also no evidence showing that he is scheduled to be transferred back to CCDC. Lastly, there is no evidence about what would occur after he leaves prison to land him back at CCDC; hopefully for his sake that will not be the case. Therefore, I deny Bousley's request to add a RLUIPA claim because it is moot.

**IV. CONCLUSION**

I THEREFORE ORDER that plaintiff Antoine Bousley's motion for extension of time **(ECF No. 113) is GRANTED.**

I FURTHER ORDER that defendants Ramona Logan, Richard Forbus, Fred Meyer, Aaron Mosley, and the Estate of Bonnie Polley's motion for summary judgment **(ECF No. 110) is GRANTED.**

I FURTHER ORDER the clerk of court to enter judgment in favor of the defendants and to close the case.

DATED this 19th of August, 2024.

_____
Andrew P. Gordon
United States District Judge